[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this matter, the plaintiff Robert DeFranzo claims damages for services rendered to the defendant which remain unpaid.
The First Count of the complaint alleges that he, upon the request of the defendant through its president, Milton F. Marshall, prepared a maintenance manual for an agreed upon price of $15,000 which sum, despite demand, remains unpaid constituting a breach of contract.
The Second Count sets out a claim by the plaintiff for the value of services rendered to the defendant corporation over a period of time from July 1990 totaling 840 hours at a rate of $25 per hour, for a total of $21,000 which amount remains unpaid to date. CT Page 2447
The Third Count is based upon a claim of unjust enrichment based upon the services rendered as set-out in the preceding two counts of the complaint.
The defendant in its amended answer of June 1, 1998 essentially denies the allegations of the plaintiff's complaint and sets out four special defenses claiming (1) a failure of consideration for the contracts claimed by the plaintiff, (2) a defense of laches, (3) payment in full of any claim by providing goods or services to the plaintiff of equivalent value and (4) denial that any contract ever existed.
The plaintiff first met Milton Marshall, the owner and president of Capital Airlines in 1988. At that time the plaintiff was employed by Keystone Aviation as an aircraft technician and inspector. Both Capital and Keystone ran their operations out of Oxford Airport in Oxford, Connecticut. At that time DeFranzo testified that Marshall and his corporation Capital Airlines had acquired a new aircraft and in order to operate it under F.A.A. regulations, certain manuals were required: i.e. a general maintenance manual, a Maintenance Inspection Guide and a Minimum Equipment List. According to DeFranzo, the defendant offered him $15,000 to develop these manuals and at the same time agreed to pay to the plaintiff $25 per hour to work on the defendant's airplanes.
The plaintiff set about to prepare the manuals as agreed and also began work on the defendants aircraft. The manuals were ultimately approved by the F.A.A. for use in defendant's commercial operations in May of 1991. At that point, the plaintiff claims the agreed figure of $15,000 was due and payable but payment was never forthcoming.
The plaintiff further claimed that as to the work performed on the defendant's aircraft he kept a computer record which reflected a total of 840 hours and that from time to time he requested payment but his requests were always met by assurances from Marshall, but again, no payments were ever received.
The relationship between the plaintiff and the defendant was unique as the plaintiff and Marshall's daughter married in June of 1990 but this marriage was dissolved in April, 1995. The plaintiff and the defendant's daughter, Kathie Lynn, had their own home but when the couple separated prior to the dissolution and Kathie moved out, the plaintiff later discovered that certain CT Page 2448 records including log books and invoices were taken from the residence. The plaintiff testified, however, that he recorded his hours on a computer disc which was, and presumably still is, in the possession of the defendant corporation at their corporate offices.
While the defendant through its president Marshall claims that no contract was ever entered into for the preparation of manuals or performance of labor for the defendant, there was testimony from Mrs. Marshall that she and her husband Milton Marshall loaned the plaintiff and their daughter money for the purchase of a house but later claimed that they forgave the loan in exchange for the work that was done for Capital by the plaintiff. (T. — p. 68, 10-29-98) However, this money was given only to the Marshalls' daughter, (T. p. 16, 10-30-98) and according to the plaintiff, Kathie related to him that the money was a payment to her for services rendered to the defendant corporation (T. — p. 42, 10-29-98) and also that the money was a gift. However, Kathie claimed the $15,000 as a debt owed to Mr. and Mrs. Marshall on the financial affidavit filed by her in connection with the dissolution (Plaintiff's Exh. 9). Mr. Marshall also testified that on occasion he asked the plaintiff to keep track of his hours that he was logging for the work that he did. (T. — p. 26, 10-30-98)
Marshall testified that it was his understanding that in exchange for the manual preparation and aircraft repair work the plaintiff was to be compensated by use of the company's planes for training purposes but no substantial evidence was offered for this claim which was denied by the plaintiff. To the contrary, the plaintiff testified that he paid for the use of the company's aircraft. (T.-45 10-29-98).
There is also in evidence Plaintiff's Exhibit One which is a letter signed by Mr. Marshall as president of Capital Airlines which recites that the plaintiff was to be employed by Capital at an annual salary of $25,000 and an additional hourly rate of $25 for aircraft maintenance. While Mr. Marshall testified that this was written only as a means to allow his daughter and her husband, the plaintiff, to secure a bank loan, it does confirm the plaintiff's claim as to the hourly rate for his services. Mr. Marshall also testified that the plaintiff assumed the position of Director of Maintenance for the defendant, a position required for compliance with F.A.A. regulations (T. — p. 5, 10-30-98), a position that customarily carries with it compensation for its CT Page 2449 performance. (T. — p. 20, 10-29-98)
The defendant has claimed in his special defenses (1) that there has been a total failure of consideration for the contract in question, (2) that the plaintiff's claim is barred by laches, (3) that the debt claimed by the plaintiff has been paid in full and (4) that no contract existed between the parties.
None of these special defenses have been established by the evidence offered by the defendant sufficient to bar the plaintiff's claim. Evidence offered by the plaintiff demonstrates by a preponderance of the evidence that services were performed by the plaintiff to the benefit of the defendant. No prejudice has been demonstrated by the defendant as relates to the time this lawsuit was brought by the plaintiff which is required to establish the defense of laches. There was no significant evidence offered as to the furnishing of services to the plaintiff by the defendant corporation and the Fourth Special Defense is simply a restatement of the first special defense.
In summary, this case involves a determination of the issues by the credibility of the several witnesses who testified during the trial. The court concludes that the testimony offered by the plaintiff is credible as to the issues raised in the plaintiff's complaint, and accordingly finds the allegations proven by a preponderance of the evidence.
Judgment may enter in the amount of $15,000 on the First, Count, and in the amount of $21,000 on the Second Count. The court, makes no finding on the Third Count as it is of no consequence as findings have been made on the First and Second Counts. The judgment shall also include allowable costs.
BY THE COURT, George W. Ripley II Judge Trial Referee